NOT DESIGNATED FOR PUBLICATION

No. 119,927

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GUADALUPE MENDEZ-ESPARZA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JEROME B. HELLMER, judge. Opinion filed October 11, 2019. Affirmed.

*Allie J. Burris*, of Blackwell & Struble, LLC, of Salina, for appellant.

*Anna M. Jumpponen*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., HILL and WARNER, JJ.

POWELL, J.: Guadalupe Mendez-Esparza appeals her conviction for driving under the influence (DUI), arguing the district erred by not suppressing the results of her blood alcohol test. Specifically, she argues that law enforcement had no legal authority to obtain a search warrant for a breath test after she had refused to consent to one and that law enforcement's failure to contact the Mexican Consulate constituted an unlawful deprivation of her right to counsel. For the reasons we further explain below, we disagree and affirm.

1

Sheriff's Deputy Craig Norris stopped Mendez-Esparza at 2 a.m. after she made an improper turn onto the shoulder of the road, almost colliding with the guardrail. Upon approaching the car, Norris smelled alcohol. Mendez-Esparza claimed that she was not drinking and had just picked up her two friends from the bar. Norris asked Mendez-Esparza to exit the vehicle and perform several field sobriety tests. First, he requested Mendez-Esparza recite the alphabet from E to S, which she completed correctly. Second, he requested that she count down from 69 to 58, which, after a misstart where she began at 59, she also completed correctly. At this point, Mendez-Esparza admitted to Norris that she had "maybe had one drink." Next, Mendez-Esparza failed to walk in a straight line following the chalk line drawn by Norris and also failed to balance on one leg. After failing these final two tests, Norris offered Mendez-Esparza a preliminary breath test. She did not answer Norris but, instead, became argumentative. When Mendez-Esparza refused to respond, Norris arrested her for DUI.

At the police station, Lieutenant Scott Anderson read Mendez-Esparza the DC-70 implied consent advisory. While completing paperwork, Anderson noticed Mendez-Esparza had a limited term driver's license—indicating that she was not an American citizen. Anderson asked Mendez-Esparza if she wanted him to notify the Mexican Consulate. Mendez-Esparza responded, "Of course I would." Anderson gathered the necessary forms and attempted to read them to Mendez-Esparza and have her sign them. Mendez-Esparza became argumentative, refused to respond, and refused to sign the necessary forms when Anderson brought them to her. Instead, she responded to the consulate forms by asking, "Why would I want to do that?" After attempting to complete the forms with Mendez-Esparza for approximately 15 minutes without success, Anderson determined that she no longer wanted the Mexican Consulate notified.

While Anderson was with Mendez-Esparza, Norris applied for a search warrant to administer a breath test to Mendez-Esparza. After obtaining the warrant, Mendez-Esparza then consented to the breath test. Her blood alcohol level was 0.153.

Mendez-Esparza filed a motion to suppress the results of her breath test. In her motion, Mendez-Esparza made two arguments: (1) Law enforcement could not seek a search warrant for a breath test after a suspect had refused to consent to such a test; and (2) the denial of her right to notify the Mexican Consulate constituted an unlawful deprivation of her right to seek the assistance of counsel. After a hearing, the district court denied Mendez-Esparza's motion to suppress.

The case proceeded to a bench trial with Mendez-Esparza renewing her motion to suppress. The district court denied the motion and found Mendez-Esparza guilty of (1) driving under the influence of alcohol in excess of 0.08 and (2) making an improper turn.

Mendez-Esparza timely appeals.

DID THE DISTRICT COURT ERR IN DENYING
MENDEZ-ESPARZA'S MOTION TO SUPPRESS HER BREATH TEST?

On appeal, Mendez-Esparza makes two arguments in support of her contention that the district court erred by not suppressing the results of her breath test. First, Mendez-Esparza renews her argument before the district court that law enforcement was not entitled to obtain a search warrant for a breath test after she had refused to submit to one. Second, Mendez-Esparza argues that law enforcement's failure to notify the Mexican Consulate of her arrest was tantamount to denying her the right to counsel.

We apply a bifurcated standard of review to motions to suppress. First, we review "the district court's factual findings to determine whether they are supported by

3

substantial competent evidence." *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). In making this examination, we do not reweigh the evidence or the witness' credibility. Second, the district court's ultimate legal conclusion is reviewed de novo. "When the facts supporting the district court's decision on a motion to suppress are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review." 307 Kan. at 827. The State bears the burden to prove the challenged evidence's admissibility. *State v. Guein*, 309 Kan. 1245, 1252, 444 P.3d 340 (2019).

A.      *The State's use of a search warrant for a breath test after Mendez-Esparza's refusal*

First, Mendez-Esparza argues that law enforcement improperly obtained a search warrant for her breath to test her blood alcohol level. But she concedes that our Supreme Court has already resolved this issue against her position. See *City of Dodge City v. Webb*, 305 Kan. 351, Syl. ¶ 3, 381 P.3d 464 (2016).

*Webb* expressly recognizes law enforcement's authority to obtain a search warrant to perform a blood alcohol test after the suspect has refused to consent to the test. 305 Kan. at 357. Before 2008, K.S.A. 8-1001(h) provided protections against involuntary blood alcohol tests after a suspect refused to consent. See K.S.A. 2007 Supp. 8-1001(h). The Supreme Court found that when the Legislature deleted that subsection and did not recodify it in another section of the law, the Legislature removed that protection: "Without the 'additional testing shall not be given' language, there is nothing in the statutory scheme that prohibits law enforcement from obtaining and executing a warrant in accordance with the constitutionally prescribed minimal requirements and individual protections." 305 Kan. at 357. Accordingly, law enforcement was legally entitled to obtain a search warrant for a breath test.

4

B.     *Law enforcement's failure to contact the Mexican Consulate*

Second, Mendez-Esparza argues that her request for the assistance of the consulate of her country of citizenship is tantamount to requesting assistance from counsel and that law enforcement's failure to notify the Mexican Consulate deprived her of her right to consult with counsel. As a result, Mendez-Esparza asserts that results of the breath test should be suppressed in accordance with the court's decision in *State v. Kelly,* 14 Kan. App. 2d 182, 190-92, 786 P.2d 623 (1990) (exclusionary rule applicable when DUI suspect denied statutory right to post-testing counsel). However, she cites no authority to support her arguments.

The State responds by correctly anchoring the right of a foreign national to have his or her consulate notified when arrested to the Vienna Convention on Consular Relations and Optional Protocol on Disputes Article 36(1)(b) (Vienna Convention). The State argues the issue has not been adequately briefed—and is therefore waived— because Mendez-Esparza states the right exists without providing legal support before arguing for the breath test's suppression. In the alternative, the State also argues that suppression is not the proper remedy for a violation of the Vienna Convention. Whether Article 36(1)(b) applies to Mendez-Esparza's motion to suppress is question of law entitled to de novo review. See *State v. Rosas*, 28 Kan. App. 2d 382, 387, 17 P.3d 379 (2000).

Parties must cite to relevant legal authority in their briefs to support their arguments. Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34). Failure to adequately support an argument with legal authority or to show why the argument is valid in the absence of authority or in spite of contrary authority can result in our deeming the issue waived or abandoned. *State v. Gonzalez*, 307 Kan. 575, 592, 412 P.3d 968 (2018). Mendez-Esparza merely cites to K.S.A. 2014 Supp. 8-1001(k)(9) in support of her right to consult with counsel post-testing. She then asserts, without authority or reasoned

explanation, that the denial of the assistance of the Mexican Consulate is equivalent to a denial of her right to counsel. Mendez-Esparza fails to connect her right under the Vienna Convention to the suppression of the breath test results. Instead, Mendez-Esparza jumps straight to her argument that the denial of her statutory right to counsel should result in the suppression of the breath test results. Supreme Court Rule 6.02(a)(5) requires Mendez-Esparza to support every argument with legal authority or some rationale explaining her position. Her failure to do so here means she has not adequately briefed her argument, and accordingly, we deem it waived or abandoned.

Even if this issue had been properly presented to us, Mendez-Esparza's argument fails on its merits. The Vienna Convention is a multilateral, international treaty "to which the United States and Mexico are signatories [and] requires an arresting government to notify a foreign national who has been arrested of his right to contact his consul." *Rosas*, 28 Kan. App. 2d at 388. The relevant section to Mendez-Esparza's appeal is Article 36(1)(b), which reads:

> "[I]f [the national] so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph[.]" Vienna Convention on Consular Relations, April 24, 1963, Art. 36(1)(b), 21 U.S.T. 77, T.I.A.S. No. 6820.

Courts have been divided on whether the Vienna Convention contains individual rights. *United States v. Lombera-Camorlinga*, 206 F.3d 882, 885 (9th Cir. 2000). The preamble of the treaty states that it "is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective states." Vienna Convention, 21 U.S.T. at 79. The United States Supreme Court has stated, in dicta, "that

6

the Vienna Convention 'arguably' creates individual rights," but the Court still treats the issue as an open question. *Lombera-Camorlinga*, 206 F.3d at 885.

However, we need not conclusively answer the question of whether the Vienna Convention creates individual rights which may be invoked or whether Mendez-Esparza's right to have the Mexican Consulate contacted was improperly denied because even if we assume, without deciding, that Mendez-Esparza enjoyed individual protection under the Vienna Convention and that her rights under it were improperly denied, she is still not entitled to suppression of the breath test results as a remedy. The United States Supreme Court addressed suppression as a remedy for violations of Article 36(1)(b) in *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 126 S. Ct. 2669, 165 L. Ed. 2d 557 (2006). The Court found that, in regards to the text of the Vienna Convention, "the question of the availability of the exclusionary rule for Article 36 violations is a matter of domestic law" and Article 36 does not require suppression because "[t]he exclusionary rule as we know it is an entirely American legal creation." 548 U.S. at 343-44. United States law does not require suppression of evidence for Article 36 violations. "Article 36 does not guarantee defendants *any* assistance at all . . . only a right of foreign nationals to have their consulate *informed* of their arrest or detention—not to have their consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention," such as when a suspect invokes his or her *Miranda* rights. 548 U.S. at 349.

Another panel of this court addressed a similar issue in *Rosas*, where a traffic stop revealed an open whiskey bottle on the floorboard and an outstanding warrant for Rosas' arrest. Law enforcement arrested Rosas and interrogated him in both Spanish and English, though he informed law enforcement that he understood English very well. Rosas moved to suppress the drugs found after he was searched and all incriminating statements, contending the police officers' failure to advise him of his right to consult the Mexican Consulate was in violation of the Vienna Convention and required automatic suppression of all evidence.

The *Rosas* panel adopted the reasoning of the Ninth Circuit Court of Appeals in *Lombera-Camorlinga* that "a violation of the treaty does not restrain or eclipse our judicial safeguards which maintain fairness, integrity, and justice." 28 Kan. App. 2d at 391. The *Lombera-Camorlinga* court held that suppression of evidence was not an appropriate remedy for a violation of the Vienna Convention because nothing in the treaty's language suggests "Article 36 was intended to create an exclusionary rule with protections similar to those announced by the United States Supreme Court three years later in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)." 206 F.3d at 883-84. The *Rosas* panel held that the suppression of evidence was not an appropriate remedy for the violation of the Vienna Convention because the Vienna Convention's purpose is to benefit consular posts in their performance, not grant rights to individuals. 28 Kan. App. 2d at 391.

Accordingly, even if we were to assume that Mendez-Esparza's Vienna Convention rights were violated, the remedy Mendez-Esparza seeks is simply not available to her. See *Sanchez-Llamas*, 548 U.S. at 349; *Rosas*, 28 Kan. App. 2d at 391. The district court did not err in refusing to suppress the breath test results.

Affirmed.